[Civ. No. 15719. First Dist., Div. One. Mar. 12, 1954.]

JOSEPH GILBERT, Appellant, v. YELLOW CAB COM-
PANY (a Corporation) et al., Respondents.

Ernest E. Emmons, Jr., and Charles P. Scully for Appellant.

Rosendale, Thomas, Muller & Talcott for Respondents.

WOOD (Fred B.), J.—In this action for personal injuries sustained by plaintiff when hit by a taxicab owned by defendant Yellow Cab Company, a corporation, and operated by defendant Richard E. Byers, verdict and judgment were for plaintiff in the sum of $5,000. Defendants were granted a new trial "on the ground of the insufficiency of the evidence to sustain the verdict," with directions that the new trial be had "on all of the issues in the action."

Plaintiff has appealed. He predicates prejudicial error upon asserted lack of evidence sufficient to support a judgment for the defendants and upon the trial court's refusal of his requested instruction on last clear chance.

 There is evidence which would support a finding that the driver of the cab was not negligent or a finding that plaintiff was negligent and that his negligence was a proximate cause of the injury. The accident occurred at the intersection of Main and Gabilan Streets in Salinas. Main runs north and south, Gabilan east and west. Visibility was good. Plaintiff was afoot, going north on Main in the west crosswalk. Byers was driving west on Gabilan.

Byers testified that he was traveling in the right inner lane on Gabilan, next to the center line; he stopped at the intersection, the signal being red; he waited for the light to turn green, glanced to the right and the left, and then proceeded to cross the intersection at approximately 5 miles per hour, looking straight ahead; he first saw plaintiff when plaintiff was about 3 feet to the side of the front of the cab and then applied the brakes as "quick as possible"; plaintiff was running; the speed of the car at impact was approximately 3 miles per hour; the impact occurred about $3\frac{1}{2}$ to 4 feet north of the center line of Gabilan Street; he was $1\frac{1}{2}$ or 2 feet from plaintiff when he applied his brakes; he traveled less than a car length after the impact; his brakes were in good condition.

A police officer who witnessed the accident testified that plaintiff entered the crosswalk at a time when the signal was red; plaintiff was running; just before the accident plaintiff ran to his left and threw up his hands to fend off the cab. The witness saw plaintiff on the left fender, not with his hands on top of the hood. The cab left skid marks of 8'5" for the right and 6'2" for the left wheels, beginning at the westerly line of the crosswalk. He estimated the cab's speed at about 10 or 15 miles per hour and that the impact was north of the center line of Gabilan and 10 or 11 feet west of the west crosswalk.

Mary Hedburg, who was driving east on Gabilan approaching Main, testified that when the light was green for her and the cab, plaintiff crossed in front of her, running. Mrs. Daggett, a passenger in the Hedburg car testified that the plaintiff crossed the street against the red light, running.

Betty Vosti, driving north on Main, testified that she stopped for the red light at the intersection, that at the time of the

accident the lights controlling traffic on Main Street were red.

A bus driver, traveling south on Main, testified that he had stopped at the north crosswalk and completed the loading of passengers; he could not proceed because the light was red on Main; he first noticed plaintiff after the light had turned red and just before plaintiff left the curb; that plaintiff was running and did not stop running until he was hit.

Plaintiff testified that prior to the accident he was walking north along Main Street on the west sidewalk; when he reached the southwest corner of the intersection and stopped he saw the bus he was planning to take, across Gabilan at the northwest corner of the intersection; the light was green; he looked to the right and left, saw no car approaching on Gabilan from either direction, and then walked northerly in the crosswalk across Gabilan; he was looking north while crossing; he was a little more than halfway across when the cab hit him; he did not see the cab before it hit him.

Here is evidence that would support a finding that the cab driver was not negligent or a finding that plaintiff was negligent and that his negligence was a proximate cause of the injury. Plaintiff's testimony merely produced a conflict in the evidence, to be resolved by the trier of the facts.

■ The trial judge when considering the motion for new trial was a trier of the facts; had the function of weighing and evaluating the evidence; was not bound by the jury's verdict. ■ The "settled rule" is that "the granting of a motion for a new trial rests within the discretion of the trial judge to such an extent that an appellate court will not interfere unless an abuse of discretion clearly appears. ■ All presumptions are in favor of the order and it will be affirmed if it is sustainable on any ground. (*Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 169 [153 P.2d 338], and cases cited.) ■ The trial court in considering a motion for new trial is not bound by a conflict in the evidence, and has not abused its discretion when there is any evidence which would support a judgment in favor of the moving party. (*Estate of Green*, 25 Cal.2d 535, 542 [154 P.2d 692]; *Hames* v. *Rust*, 14 Cal.2d 119, 124 [92 P.2d 1010].) ■ The only conflict may be the opposing inferences deducible from uncontradicted probative facts. In such case the trial court may draw inferences opposed to those accepted by the jury, and may thus resolve the conflicting inferences in favor of the moving party, for 'It is only where it can be said as a

matter of law that there is no substantial evidence to support a contrary judgment that an appellate court will reverse the order of the trial court.' (*Brooks* v. *Metropolitan Life Ins. Co.*, 27 Cal.2d 305, 307 [163 P.2d 689]; *Malloway* v. *Hughes*, 125 Cal.App. 573, 580 [13 P.2d 1062].)" (*Ballard* v. *Pacific Greyhound Lines*, 28 Cal.2d 357, 358-359 [170 P.2d 465].)

Yet, plaintiff contends that the trial court's refusal to give his requested instruction on last clear chance requires a reversal of the order for new trial. His reasoning seems to be that the evidence calls for application of the doctrine of last clear chance; the trial court's refusal of the requested instruction to the jury means that the court later decided the motion for new trial without applying that doctrine; hence, the motion was erroneously grounded upon evidence that plaintiff was negligent and that his negligence was a proximate cause of the injury.

There are several fallacies in this argument. Even if the requested instruction should have been given,* it does not appear from the record which plaintiff has furnished (1) that plaintiff presented the last clear chance doctrine to the court upon the hearing of the motion for new trial, (2) whether the court in deciding the motion did or did not apply that doctrine to the evidence before him, or (3) whether the court found the evidence insufficient to support an implied finding of the jury that defendant was negligent or insufficient to support an implied finding that plaintiff was not contributorily negligent.

In this state of the case, a reviewing court could not reverse the order for new trial because of the last clear chance doctrine unless able to say that all elements of that doctrine were present *as a matter of law*. The presence of those elements depends upon evaluation of testimony and the drawing of inferences. For example, the cab driver testified he did not see plaintiff until the latter was within 3 feet of the cab. Did that afford the driver a *clear* chance to avoid the accident? Plaintiff says the driver must have seen him in plenty of time because the driver was looking straight ahead and visibility was good. But if plaintiff ran across, starting after the lights had turned (red for him and green for the cab driver), it cannot be said that the *only* reason-

---

*We need not and do not hold that it should have been given. (See discussion of the "must have seen" rule in *Jobe* v. *Harold Livestock Com. Co.*, 113 Cal.App.2d 269, 274 [247 P.2d 951].)

able inference is that the driver did see him. The trial judge may well have believed the cab driver and have determined, as trier of the facts, that there was no basis in fact for the "must have seen" rule.

The order appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 6, 1954.